UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGAR CHAN-SOSA,<br><br>      Plaintiff,<br><br>      v.<br><br>FRANK JORGENSEN,<br><br>      Defendant. | Case No. 15-cv-00008-SI<br><br>**ORDER ON SUMMARY JUDGMENT**<br>Re: Dkt. No. 59 |

Edgar Chan-Sosa's complaint alleges unlawful arrest, excessive force, and retaliation in exercise of first amendment rights pursuant to 42 U.S.C. § 1983 against defendant, Officer Frank Jorgensen. Dkt. No. 36. Defendant now moves for summary judgment. Dkt. No. 59. Chan-Sosa opposes the motion. Dkt. No 61. Officer Jorgensen's motion is GRANTED as to the unlawful arrest and retaliation claims. Officer Jorgensen's motion is DENIED on the excessive force claim.

**BACKGROUND**

In the early morning of January 13, 2013, Edgar Chan-Sosa and six other friends were riding in an SUV driven by Ms. Chan-Sosa, Edgar's sister. Dkt. No. 36 at ¶ 12. Three of the SUV passengers were seated in the cargo area in the back of the car without seatbelts. *Id*. at ¶ 13. Ms. Chan-Sosa was pulled over by Officer Jorgensen and Officer Allen for running a red light. Dkt. No. 59-1 at 13 (Mobile Video/Audio Recording Systems[1] ("MVARS")) at 01:00-01:05. The

---

[1] Officer Jorgensen has filed an Administrative Motion to Seal (Dkt No. 60) the MVARS video in its entirety because of Jose Gonzalez's presence in that video. At the time of the events, Mr. Gonzalez was sixteen years old, and was only shown in the video for about thirty seconds before Officer Allen forced him off-screen, for about twenty seconds face down on the police car's hood, and later in the recording sitting in a police car. *See* MVARS at 02:50-03:18, 08:43-09:02, 32:40-1:02:58. Defendant's motion to seal the video in its entirety is denied. Jose Gonzalez has

1  uniformed officers approached Ms. Chan-Sosa's window and noted open containers of alcohol in
2  the vehicle as well as passengers in the cargo area. MVARS at 01:55-02:12.

3  The three passengers in the cargo area refused to produce identification, and the officers
4  told them to exit the vehicle. *Id*. at 02:20-02:44. Once the three vacated the SUV, the officers
5  ordered them to "take a seat," but they did not comply. *Id*. at 03:03-03:13. Among these
6  individuals was sixteen-year-old Jose Gonzalez. Shortly thereafter, Officer Allen forcibly moved
7  Gonzalez away from the vehicle and the two crashed into and knocked over a trash can. Dkt. No.
8  36 at ¶ 14; MVARS at 03:09-03:21. This physical altercation was followed by loud verbal
9  protests and a string of obscenities from the other males at the scene. MVARS at 03:22-04:55.
10 Chan-Sosa exited the SUV and approached defendant, who was standing near Allen and Gonzalez,
11 and defendant pushed him away. *Id*. at 03:25-03:28. Sometime during this period, defendant
12 drew his taser and pointed it at the passengers. Dkt. 59-1, 29:19-30:18.

13 Chan-Sosa approached the altercation between Allen and Gonzalez a third time. MVARS
14 at 04:45-04:48. Chan-Sosa alleged that he said "there is no need for that" in reference to Allen's
15 use of force on Gonzalez. Dkt. No. 36 at ¶ 15; *see also* MVARS 04:50 (recording a male saying
16 "that's not necessary."). Chan-Sosa was four to five feet from Officer Jorgenson. Dkt. 59-1 at
17 38:15-19. Jorgensen deployed his taser; one dart/electrode struck the area above Chan-Sosa's eye
18 and the other struck the arm of his jacket. Dkt. No. 36 at ¶ 16. Seconds later, Jorgenson used the
19 taser again, this time in drive-stun mode, meaning that he applied the tip of the taser directly to
20 Chan-Sosa's body, on his back, while the taser dart from the first firing was still in the area above
21 Chan-Sosa's eye. *Id*. Jorgenson planned to arrest Chan-Sosa for violating Cal. Penal Code

---

already been involved publicly in this proceeding by plaintiff's attorney, *see* Dkt. No. 36 at ¶¶ 14-15 (Plaintiff's Second Amended Complaint names Jose Gonzalez and states he was sixteen years old at the time of the events), and defendant has cited no binding law that would compel the Court to redact the portions of the video where he appears. Defendant cited a California state precedent and a California Welfare and Institutions Code section, neither of which binds this Court or is factually relevant. *See San Bernardino Cty. Dep't of Pub. Soc. Servs. v. Superior* Court, 232 Cal. App. 3d 188, 197 (1991), Cal. Welf. & Inst. Code § 827. Defendant also cites Federal Rule of Civil Procedure 5.2, which requires redactions of the names of minors in public filings. Fed. R. Civ. P. 5.2(a)(3). Because the events occurred in 2013, and Jose Gonzalez was sixteen at the time, he is no longer a minor in 2016. The presumption in favor of public access to records governs. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006).

1  § 148(a)(1) "for repeatedly ignoring orders to back away." Dkt. No. 59 at 13:10-11. Chan-Sosa
2  was arrested as he was transported to the hospital. Dkt. No. 36 at ¶ 18. As a result of the tasing,
3  Chan-Sosa suffered numerous injuries to his left eye and to the left side of his face. Dkt. No. 61-7,
4  13:23-14:2.

## LEGAL STANDARD

Defendant moves for summary judgment. Dkt. No. 59. Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the suit under governing law, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his or her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' [to] designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citations omitted).

The court's function on a summary judgment motion is neither to make credibility determinations nor to weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *Id.* at 631. "If direct evidence produced by the moving party conflicts with direct evidence produced by the

nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *Id*. A video may override the allegations of the events from either party if their version of the events is so utterly discredited by the record that no reasonable jury could believe that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## DISCUSSION

Defendant Jorgensen opposes plaintiff's unlawful arrest, excessive force, and first amendment retaliation claims by arguing plaintiff has not proffered sufficient evidence to support his claims and that Jorgensen is protected by the qualified immunity defense. Dkt. No. 59 at 6:8-14. Plaintiff responded to defendant's excessive force argument for qualified immunity, but offered no rebuttal to defendant's arguments regarding granting summary judgment on the unlawful arrest and first amendment retaliation claims. Dkt. No. 61.

### I. Unlawful Arrest

Plaintiff's complaint alleges that defendant unlawfully arrested him in violation of 42 U.S.C. § 1983. According to plaintiff, "an objectively reasonable officer would have known that there was no fair probability that Mr. Chan-Sosa had committed or was committing any crime, and an objectively reasonable officer would have known that there was no lawful basis to arrest Mr. Chan-Sosa." Dkt. No. 36 at 6.

A claim for unlawful arrest may arise under § 1983, "provided the arrest was without probable cause or other justification." *Dubner v. Cnty. of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001). "The determination whether there was probable cause is based upon the information the officer had at the time of making the arrest. It is essential to avoid hindsight analysis, *i.e.*, to consider additional facts that became known only after the arrest was made." *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008) (citations omitted).

Defendant alleges that he arrested plaintiff for resisting arrest under Cal. Penal Code § 148(a)(1). The statute states: "Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician . . . in the discharge or attempt to

4

discharge any duty of his or her office or employment" shall be punished by fine or imprisonment. Cal. Penal Code § 148(a)(1) (West). The elements of a § 148(a)(1) "violation, are: (1) 'the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties.'" *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015).

Plaintiff failed to oppose defendant's summary judgment motion on this cause of action. The Court finds that plaintiff has failed to meet his burden to move beyond his complaint and designate specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324. Plaintiff points to no specific facts that would suggest that defendant did not have probable cause to arrest him based on the melee that ensued at the scene of the traffic stop. Because no triable issues of fact exist as to plaintiff's unlawful arrest claim, the Court GRANTS defendant's motion for summary judgment on this claim.

## II. Excessive Force

Plaintiff alleges that Jorgensen used excessive force in violation of 42 U.S.C. § 1983 when Jorgensen tased him in dart and drive stun mode, resulting in plaintiff's eye injury. Dkt. No. 36 at ¶ 28. Defendant argues that he is entitled to qualified immunity because courts generally grant qualified immunity to the use of a taser on an actively resisting subject. Dkt. No. 59 at 17:10-11. In opposition, plaintiff asserts that there are triable issues of fact as to the level of threat the officers faced and the reasonableness of defendant's actions. *See* Dkt. No. 61 at 14:7-15:2.

The Ninth Circuit analyzes whether excessive force was used by "considering the nature and quality of the alleged intrusion"; and then "the governmental interests at stake by looking at (1) how severe the crime at issue is, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (citing *Graham v. Connor*, 490 U.S. 386 (1989)). "[T]here are no per se rules in the Fourth Amendment excessive force context; rather, courts must still slosh their way through the factbound morass of

5

'reasonableness.'" *Mattos*, 661 F.3d at 441 (citing *Scott v. Harris*, 550 U.S. 372, 383 (2007)).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene," *Graham*, 490 U.S. at 396; an officer cannot simply state that he "fear[ed] for his safety or the safety of others," -- "there must be objective factors to justify such a concern." *Young*, 655 F.3d at 1163 (quoting *Deorle v. Rutherford,* 272 F.3d 1272, 1281 (2001)). Also relevant is what level of force was used on the injured party.

Here, a taser was used, and the use of a taser "in dart mode constitutes an 'intermediate, significant level of force that must be justified by the governmental interest involved.'" *Bryan v. MacPherson,* 630 F.3d 805, 810 (9th Cir. 2010) (quoting *Bryan v. MacPherson*, 630 F.3d 614, 622 (9th Cir. 2010) (opinion withdrawn and superseded by *Bryan*, 630 F.3d 805)). Whether excessive force was used is ordinarily a question a fact, and therefore reserved to the jury. *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) ("Because such balancing [of the individual's liberty against the government's interest] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly. This is because police misconduct cases almost always turn on a jury's credibility determinations.").

As mentioned, defendant has raised a qualified immunity defense against plaintiff's excessive force claim. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012). The application of qualified immunity depends upon: (1) whether the government actor's conduct violated a constitutional right; and (2) whether the unlawfulness of the conduct was apparent under existing law. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

As to element (1), the court must take the facts in the light most favorable to the injured party and consider if "the facts alleged show the officer's conduct violated a constitutional right[.]" *Id*. As to element (2), the Supreme Court has instructed courts "not to define clearly established law at a high level of generality," stating that the dispositive question as to element (2) is "whether the violative nature of particular conduct is clearly established." *Ashcroft v. al-Kidd*,

131 S.Ct. 2074, 2084 (2011).  The Court "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id*. at 2083.

Here, factual disputes exist as to the reasonableness of parties' actions in the moments leading up to the tasing -- that is, as to whether excessive force was used. *See Mattos*, 661 F.3d at 441 ("[T]here are no per se rules in the Fourth Amendment excessive force context; rather, courts must still slosh their way through the factbound morass of 'reasonableness.'" (citing *Scott v. Harris*, 550 U.S. 372, 383 (2007))); *Santos*, 287 F.3d at 853 ("Because such balancing [of the individual's liberty against the government's interest] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly. This is because police misconduct cases almost always turn on a jury's credibility determinations.").  The police videotape evidence is subject to varying interpretation as to plaintiff Chan-Sosa and whether/to what extent he was "resisting" or "attempting . . . flight."  The tasing incidents themselves occurred outside the view of the police videocamera, and defendant's testimony as to what happened differs considerably from plaintiff Chan-Sosa's testimony about it. For example, Chan-Sosa states that he had raised his hands in surrender fashion and was not resisting at the time that Officer Jorgensen fired the first taser darts/electrodes into his eye area; Officer Jorgensen states that Chan-Sosa was shouting imprecations at him.  The facts surrounding the second drive-stun mode tasing, done in Chan-Sosa's back, are likewise disputed.  Chan-Sosa states that he was complying with Officer Jorgensen's direction when walking away; Officer Jorgensen denies this.  These and other factual disputes about what happened, and about the reasonableness of parties' actions in the moments leading up to the tasing, preclude a summary judgment finding that no excessive force was used.[2]

Defendant's qualified immunity defense, despite protestations to the contrary, likewise presents factual determinations.  *See Saucier*, 533 U.S. at 201 ("A court required to rule upon the qualified immunity issue must consider . . . this threshold question: Taken in the light most

---

[2] The parties also dispute whether Officer Jorgensen's use of the taser on Chan-Sosa was in compliance with CHP's taser policy. See Dkt. No. 61 at 10;  Dkt. No. 66 at 7.

1  favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated
2  a constitutional right? This must be the initial inquiry."). Use of excessive force is clearly
3  unconstitutional; the question is whether this use of force was excessive. This cause of action, and
4  the inferences to be drawn from the facts alleged by the opposing parties, is particularly well-
5  suited for a jury's determination. *See, e.g.*, *Ruiz v. Sawaya*, No. 11-CV-03126-JST (PR), 2013
6  WL 5665404, at *4 (N.D. Cal. Oct. 15, 2013) ("[E]valuation of plaintiff's excessive force claim
7  depends principally on credibility determinations and the drawing of factual inferences from
8  circumstantial evidence, both of which are the traditional functions of the jury . . . because
9  questions of reasonableness are not well-suited to precise legal determination . . .; the jury should
10 be allowed to assess whether the force used by the officers was excessive. Accordingly, the Court
11 rejects Sawaya's assertion of qualified immunity." (citations omitted)).

12       Summary judgment is therefore DENIED as to plaintiff's excessive force claim for relief.

### III. First Amendment Retaliation Claim

15       Chan-Sosa argues that defendant tased and arrested him in retaliation for exercising his
16 first amendment right of expression through speech protesting police misconduct, violating 42
17 U.S.C. § 1983. Dkt. No. 36 at ¶¶ 32, 33. In his motion for summary judgment, Jorgensen argues
18 the absence of evidence of retaliatory motive. Dkt. No. 59 at 22:18-19. Defendant is correct.

19       To prove a first amendment violation, "plaintiff must provide evidence showing that by his
20 actions [the defendant] deterred or chilled [plaintiff's] political speech and such deterrence was a
21 substantial or motivating factor in [the defendant's] conduct." *Lacey v. Maricopa Cty.*, 693 F.3d
22 896, 916 (9th Cir. 2012) (internal quotations omitted). Plaintiff need not "show his speech was
23 actually inhibited or suppressed. Rather, [a court] consider[s] whether an official's acts would
24 chill or silence a person of ordinary firmness from future First Amendment activities." *Id*.
25 (internal quotations omitted). Plaintiff must also "allege facts ultimately enabling him to 'prove
26 the elements of retaliatory animus as the cause of injury,' with causation being 'understood to be
27 but-for causation.'" *Id*. at 917 (quoting *Hartman v. Moore*, 547 U.S. 250, 260 (2006)). Though
28 courts "must accept all the plaintiff's factual allegations as true, he must do more than simply

allege that the defendants acted with an improper motive in order to survive summary judgment." *Jeffers v. Gomez*, 267 F.3d 895, 907 (9th Cir. 2001). The "court may insist that the plaintiff put forward specific, nonconclusory factual allegations that establish improper motive causing cognizable injury in order to survive a prediscovery motion for dismissal or summary judgment." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (internal quotations and citations omitted).

Chan-Sosa has provided no evidence supporting this claim and has not advanced a rebuttal argument in response to defendant's summary judgment motion alleging that insufficient evidence exists. Specifically lacking is any evidence of causation — *e.g.*, that Chan-Sosa's speech was the but-for cause of his being tased, or that the tasing was the result of improper motive or indicative of retaliatory animus. Chan-Sosa must do more than simply allege that Jorgenson acted with an improper motive in order to survive summary judgment. *See Jeffers*, 267 F.3d at 907.

The Court GRANTS defendant's summary judgment motion on the first amendment retaliation claim.

## CONCLUSION

Officer Jorgensen's motion for summary judgment for unlawful arrest and first amendment retaliation is GRANTED, however, the motion for summary judgment on the excessive force claim is DENIED.

**IT IS SO ORDERED**.

Dated: March 4, 2016

SUSAN ILLSTON
United States District Judge